**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NOVO NORDISK A/S, | ) | CASE NO: 4:25-CV-01048 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| AMBLE HEALTH, INC.  , | ) | |
| | ) | **(Resolves Doc. 20)** |
| Defendant. | ) | |

Pending before the Court is Defendant Amble Health, Inc.'s  motion to dismiss for

failure to state a claim pursuant to Fed.R.Civ. P. 12(b)(6). Doc. 20. Upon review, the Court

GRANTS the motion and DISMISSES Plaintiff Novo Nordisk A/S's complaint.

## I.  FACTUAL BACKGROUND

In its opposition to Defendant's motion to dismiss, Plaintiff sets forth the facts[1]

as follows:

> The Complaint alleges that Novo Nordisk and Defendant are competitors in
> the sale of drug products containing semaglutide. Novo Nordisk is a
> healthcare company that has developed the only FDA-approved medicines
> containing the ingredient semaglutide in the United States, Compl. ¶¶ 2–3;
> Novo Nordisk markets these medicines under the trademarks Ozempic®,
> Wegovy®, and Rybelsus®, id. ¶ 4. Defendant is a telehealth company that
> sells drugs purportedly containing semaglutide, but that, unlike Novo
> Nordisk's FDA-approved medicines, are produced at compounding
> facilities. Id. ¶ 31.
>
> Most important for present purposes, the Complaint alleges that
> Defendant's compounded drug products are mass produced. Id. ¶¶ 8–9.
> According to the Complaint, Defendant's compounded drugs are not FDA-

---

[1] In reviewing Defendant's motion to dismiss, the Court must treat all factual allegations as true and construe
the complaint in a light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir.
2009).

> approved and create a higher risk to patients than Novo Nordisk's medicines because the FDA does not conduct pre-market reviews of Defendant's compounded drugs for safety, quality, or effectiveness. Id. ¶¶ 33–35.
>
> The Complaint further alleges that Defendant's advertising and promotion of its drug offerings deceives and confuses patients because it falsely claims that its drugs are personalized. Id. ¶ 46. As set forth in the Complaint, Defendant claims its drugs are "tailored to you," id. ¶ 49 (emphasis omitted), and are "tailored to your personal goals," id. ¶ 50, and that the compounded drugs it offers involve "the personalization of active ingredients, dosage, and form of a medication to meet an individual's personal needs," id. ¶ 51. The Complaint alleges that none of these claims is true: the compounded semaglutide products offered by Defendant are not personalized and rather are ordered in bulk and sold to patients off the shelf. Id. ¶¶ 52–53.

Doc. 22, p. 3-4

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In deciding a motion to dismiss under Rule 12(b)(6), the court must treat all factual allegations as true and construe the complaint in a light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Courts must resolve questions of subject matter jurisdiction before ruling on the merits of the claim. *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983). This Court is one of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If subject matter jurisdiction is lacking, this Court cannot adjudicate the action. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694,

2

702 (1982).

Article III of the Constitution confines the judicial power of federal courts to deciding actual "Cases" or "Controversies." U.S. Const. art. III, § 2. "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013). Standing has three elements. First the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Id.* at 560-61. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id*. at 561.

Even at the pleading stage, Plaintiff must clearly allege facts establishing each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). "Because Article III standing implicates a court's subject-matter jurisdiction to adjudicate a dispute, a district court may *sua sponte* dismiss a complaint for lack of standing." *Kachinski v. City of Taylor*, No. 25-1671, 2025 U.S. App. LEXIS 33726, at *4 (6th Cir. Dec. 23, 2025) (citing Fed. R. Civ. P. 12(h)(3); *Cal. Palms Addiction Recovery Campus v. United States*, 158 F.4th 726, 730 (6th Cir. 2025)).

**III.    DISCUSSION**

3

### A.        Article III Standing

"[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original). This harm must be "(a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

The Court concludes that Plaintiff has not plausibly alleged an injury in fact. In its complaint, Plaintiff sets forth the follow statements regarding the harm it contends stem from Defendant's use of the term "personalized" (doc. 1, ¶¶46-51) to describe its products:

> 67. Defendant's conduct is harmful to Novo Nordisk. Through its false statements, Defendant diverts consumers from Novo Nordisk's FDA-approved medicines with the false promise that Defendant's drugs are personalized to the patient's individual needs.
> 68. Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks. Patients who mistakenly believe Defendant to be individually personalized medicines are unlikely to understand the risks associated with, Defendant's Unapproved Compounded Drugs. This conduct threatens to undermine the reputation for quality and safety established on Novo Nordisk's FDA-approved medicines.

Doc. 1

Thus, Plaintiff contends the alleged false advertisement *may* divert patients and *may* harm its reputation.  Thus, to show injury-in-fact sufficient to establish Article III standing, Plaintiff must allege a factual basis to support its conclusion that its reputation *has been* damaged by Defendant's referring to its medications and treatments as "personalized."

Plaintiff asserts no such facts.  Instead, Plaintiff, focuses on the safety of compounded medication. However, this does not support Plaintiff's contention.

4

> "At base, [Plaintiff] appears to argue the mere fact a medication is compounded makes it an inferior version of an FDA-approved product with the same active pharmaceutical ingredients. But compounding is a federally recognized and regulated pharmaceutical practice subject to various limitations by the Federal Food, Drug, and Cosmetic Act. *See* 21 U.S.C. § 353a (describing limitations on the practice of compounding and the basis for regulatory limits on the practice). So, the existence of compounded tirzepatide medications does not, in itself, plausibly support harm to the reputation of a tirzepatide manufacturer. To permit a plausible inference of reputational harm, [Plaintiff] must allege more, namely facts supporting an inference that [Defendant's] compounded medication fails to meet consumer expectations about tirzepatide.

*Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2025 U.S. Dist. LEXIS 210557, at *10 (N.D. Cal. Oct. 24, 2025).

Further, Plaintiff does not plausibly allege that any of *Defendant's* customers were harmed by the compounded medication "such that they could draw unwarranted conclusions about the safety and efficacy" of Ozempic, Wegovy and/or Rybelsus. Id. Plaintiff notes that "the FDA has received reports of adverse events, some requiring hospitalization related to overdoses from dosing errors associated with compounded 'semaglutide' products." Doc. 1, ¶41. However, these statements go to *dosing* errors, ie, when the patient does not take the medication as prescribed. This does not support the conclusion that the term "personalized" in and of itself has led to any patient diversion.

The complaint fails to allege facts to plausibly support an inference of reputational harm or the diversion of patients due to the term "personalized." Accordingly, Plaintiff fails to set forth an inference of injury. "Without injury, there is no standing. *TransUnion LLC*, 594 U.S. at 423. Without standing this Court cannot exercise its jurisdiction. *Bradley v. United States*, 402 F. Supp. 3d 398 (N.D. Ohio 2019) (citing *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 668 (S.D. Ohio 2019) (citing *Lujan*, 504 U.S. at 560; U.S. Const. art. III, § 2).

**B.**      **Statutory Standing**

Even if Plaintiff could establish Article III standing, the Court concludes that it cannot establish statutory standing under the Lanham Act.

> To establish statutory standing under the Lanham Act, Plaintiff must satisfy a more demanding standard than constitutional standing. *See Vampire Family Brands v. Mpl Brands*, No. CV 20-9482-DMG (ASX), 2021 U.S. Dist. LEXIS 174965, 2021 WL 4134841 (C.D. Cal. Aug. 6, 2021). The heightened standing test under the Lanham Act has both a "zone of interests" and a "proximate cause" requirement. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*("*Lexmark*"), 572 U.S. 118, 131-32, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). The first prong obligates a plaintiff to adequately allege "an injury to a commercial interest in reputation or sales." *Id.*  The second prong requires that a plaintiff plead, with the requisite particularity, "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising, which occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* Put simply, Plaintiff must allege (1) a commercial injury, such as reputation or sales, and (2) that the injury is competitive, or harmful to the plaintiff's ability to compete with the defendant. *See Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).

*Eli Lilly & Co. v. Willow Health Servs.*, No. 2:25-cv-03570-AB-MAR, 2026 U.S. Dist. LEXIS 24564, at *13-14 (C.D. Cal. Feb. 3, 2026).

**Proximate Cause**

Assuming for the sake of argument that Plaintiff could establish "an injury to a commercial interest in reputation or sales," Plaintiff fails to establish that the alleged false advertising, i.e., use of the term "personalized," caused the harm in question.

> To establish proximate cause under the Lanham Act, a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. Proximate causation may be adequately alleged when "there is likely to be something very close to a 1:1 relationship between" a plaintiff's lost sales and the sales diverted to a defendant. *Id.*at 139.

6

> In *Lexmark*, the plaintiff sufficiently alleged a "1:1 relationship between the number of refurbished Prebate cartridges sold (or not sold) by the remanufacturers and the number of Prebate microchips sold (or not sold) by [plaintiff]." 572 U.S. at 139. There, the plaintiff "adequately alleged proximate causation by alleging that it designed, manufactured, and sold microchips that both (1) were necessary for, and (2) had no other use than, refurbishing Lexmark toner cartridges." *Id.* Thus, "if the remanufacturers sold 10,000 fewer refurbished cartridges because of [the defendant's] false advertising, then it would follow more or less automatically that [the plaintiff] sold 10,000 fewer microchips for the same reason." *Id.* at 140.

Id. at *21-22.

Notably, Plaintiff concedes that the medications at issue are prescription medications and acknowledges that Defendant's website states that "Compounding involves the personalization of active ingredients, dosage, and form of a medication to meet an individual's personal needs. Compounded medications are *prescribed by licensed healthcare providers* and made in licensed pharmacies. Personalized GLP-1 products are available as compounded injectables and have not received FDA approval." (emphasis added). Doc. 1, ¶51.

> Critically, regardless of advertising or patient intent, obtaining a prescription medication requires a physician to prescribe it. The physician's prescribing decision, not [Defendant's] advertisements, is the proximate cause of the patient using the compounded medication instead of Plaintiff's product.

*Eli Lilly & Co.*, supra, at *23.  Accordingly, Plaintiff fails to establish a direct causal link that Defendant's advertisements using the term "personalized" caused its harm.  Because Plaintiff lacks standing to bring the instant claims, Defendant's motion to dismiss is GRANTED and the complaint is DISMISSED.

## IV.    CONCLUSION

The Court concludes that it does not have jurisdiction to review this matter. Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction is

7

GRANTED, albeit on different grounds than it urged. This case is DISMISSED.

IT IS SO ORDERED.


March 17, 2026                                          /s/ Judge John R. Adams
Date                                                   JUDGE JOHN R. ADAMS
                                                       UNITED STATES DISTRICT COURT

8